UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAVONTAE L. DYSON,

    Plaintiff,

v.                                                              Case No. 1:17-cv-750
                                                                                    Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for child's disability benefits.

    **I.**    **Background**

        Plaintiff was born in March 1986 and received some benefits as a child. The record reflects that since that time, plaintiff completed the 11th grade and had past employment as a fast food cook and daycare driver. PageID.118. The present application involves a claim for child's disability benefits (CDB). "As required by section 202(d) of the Social Security Act, to be entitled to child's insurance benefits, the claimant must have a disability that began before attainment of age 22." PageID.42. Here, the administrative law judge (ALJ) noted that plaintiff's alleged disability onset date was amended to December 31, 2017 "in order to have a date prior to age 22 for the purpose of child's insurance benefits." PageID.40.

1

The ALJ provided the following history which is relevant to the present appeal:

The claimant initially received on September 17, 1992 Title XVI benefits as a child. The claimant then stopped receiving Title XVI benefits in August 1996 due to deemed income from his mother's wages. The claimant then started receiving auxiliary benefits due to the death of his father. In a letter dated March 3, 2004, these benefits were ceased, as the claimant turned age 18 and no longer qualified for such benefits. On August 20, 2008, the claimant received a letter regarding overpayment related to his Title XVI benefits. On December l, 2009, the claimant filed an application for child disability benefits alleging an onset date of April 1, 2008. The onset date was later amended to December 31, 2007 after he stopped working at the level of substantial gainful activity. This was a medical denial of this claim. The claimant also filed applications for Title II and Title XVI benefits on December 1, 2009 that were medical denials. On April 7, 2010, the claimant filed another application for child disability benefits (CDB) that was also denied without any further review. The claimant then filed an application for Title XVI applications on December 8, 2010 upon which he was ultimately paid starting on April 10, 2010. The claimant also had an application for Title II benefits on December 8, 2010 but it was a technical denial and not before the prior Administrative Law Judge. On May 19, 2011, the claimant filed another Title II application but it was again a technical denial, as he did not meet the insured requirements.

At the hearing, the claimant's representative argued that the claimant's child disability benefits should have immediately started following the termination of his auxiliary benefits at age 18 (Hearing Testimony). However, the claimant received a letter on March 3, 2004, indicating that he no longer qualified for auxiliary benefits as he was 18 years old; not disabled; and no longer a full-time student (Exhibit 13). The claimant subsequently turned age 18 on March 21, 2004 at which time his auxiliary benefits were stopped. Therefore, the claimant had notice that his auxiliary benefits would terminate but there is no record of him filing a CDB claim until December 1, 2009.

The claimant's representative then argued that the claimant's termination for his prior Title XVI benefits as a child was for resource and was not a medical cessation. As such, the claimant's representative argued that the claimant was never found to not be disabled. Therefore, the claimant's representative noted that the claimant should have been found disabled after his auxiliary benefits ended, so that he could have started receiving CDB benefits. Pursuant to POMS SI 02301.205 and DI 27515.030, a child benefits is terminated after more than 12 months of consecutive ineligibility due to excess deemed income. If the claimant wants to resume receiving benefits, then a new application would have to be filed resulting in a new medical determination. The undersigned notes that the claimant was found no longer eligible for Title XVI benefits in August 1996 due to his mother working. On October 1, 1997, the claimant's Title XVI child benefit's record was terminated,

2

> as more than 12 months had passed. Moreover, the requirements for disability under a child are completely different from the requirements as an adult.

PageID.41.

In support of his claim for CDB, plaintiff identified his disabling conditions as "depression and bipolar." PageID.117. The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 6, 2016. PageID.40-48. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## II. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

4

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

### III.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff had not attained the age of 22 as of the amended onset date of December 31, 2007, and that he did not engage in substantial gainful activity from December 31, 2007 to March 21, 2008, when he turned age 22.  PageID.43-44.  In addition, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. PageID.44.

At the second step, the ALJ found that prior to attaining age 22, plaintiff had severe impairments of a learning disorder, an adjustment disorder, and a personality disorder.  PageID.44. At the third step, the ALJ found that prior to attaining age 22, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.44.  The ALJ decided at the fourth step that:

> [P]rior to attaining age 22, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant was able to understand, remember, and carryout [sic] simple instructions; deal with changes in a routine work setting; and respond appropriately to supervision and coworkers.

PageID.45.  The ALJ also found that plaintiff had no past relevant work. PageID.47.

At the fifth step, the ALJ determined that:

> The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.  Pursuant to SSR 85-15, the definition of unskilled work includes that ability to understand, remember, and carry out simple instructions; respond appropriately to the usual work situations; deal with the changes in a routine work setting; and respond appropriately to

> supervision and coworkers. The claimant's residual functional capacity is just the definition of unskilled work. Therefore, the undersigned notes that unskilled work would have remained.

PageID.48. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time prior to March 21, 2008, the date he attained age 22. PageID.48.

### IV.   DISCUSSION

Plaintiff set forth one error on appeal:

**The ALJ erred in not incorporating limitations from all the medically determinable impairments, both severe and non-severe, into the Residual Functional Capacity (RFC) and erred in not considering the combined impact thereof.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). As discussed, the ALJ found that prior to attaining age 22, plaintiff had the RFC to perform unskilled work at all exertional levels.

Plaintiff contends that the ALJ omitted key limitations from the RFC due to the following severe impairments. First, plaintiff suffered from asthma, which would have supported limitations including the avoidance of pulmonary irritants, fumes, odors and dust. Second, plaintiff suffered from knee problems which supported limitations in walking and standing. Third, when plaintiff's knee problems were combined with his morbid obesity, these impairments would have eliminated the occupational bases that involved standing and walking. Fourth, plaintiff's morbid obesity would have supported limitations in climbing ropes and ladders, going up ramps and stairs, crouching, stooping, balancing, and kneeling. Fifth, plaintiff's hypertension is treated with a

diuretic which causes increased urination; however, the ALJ's RFC did not account for these excess or unpredictable breaks.

Defendant points out that there is no medical evidence that plaintiff suffered from these conditions during the relevant time period of December 31, 2007 through March 21, 2008. In March 2006, plaintiff had MRIs of his knees, which showed a normal left knee and a "small focal tear peripheral aspect of the posterior horn of the medical meniscus." PageID.316-317. However, there is no further record of care. Medical records reflect that at age 21 (April 6, 2007), plaintiff was diagnosed with asthma, morbid obesity, knee pain and hypertension. PageID.306. However, the doctor's recommendations merely included a discussion of "diet, drinks, activity" and to "walk daily". PageID.306. The ALJ further found that "the claimant has no specific treatment from December 31, 2007 through March 21, 2008." PageID.47. Finally, plaintiff's physical impairments did not form the basis for his disability claim. Rather, the ALJ observed that "[i]n forms submitted to the Administration and through the claimant's testimony at the hearing, the claimant alleges that he is unable to work due to a low IQ." PageID.46. Accordingly, the ALJ's findings with respect to plaintiff's alleged physical impairments are supported by substantial evidence.

Next, plaintiff contends that because he suffered from both mental and physical limitations, the ALJ should have obtained testimony from a vocational expert (VE) at step five rather than utilizing the medical vocational guidelines. Plaintiff further contends that the ALJ's failure to call a VE was "remandable error." *See* Plaintiff's Brief (ECF No. 10, PageID.504-505). As discussed, the ALJ applied section 204.00 of the medical vocational guidelines ("grids") to determine that plaintiff was not disabled at step five. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's

characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. The ALJ found that while plaintiff suffered from a learning disability (PageID.46), he engaged in a number of daily activities and worked after he reached age 22:

> As for activities of daily living during this time, the claimant stated in the disability filing that he took care of four children, cooked, cleaned, and drove while working until March 31, 2008 (Exhibit B2E). The claimant testified that he was able to pass the driving test in order to obtain his license (Hearing Testimony). As for work history, the undersigned notes that the claimant worked past age 22 and at the level of substantial gainful activity prior to his amended onset date (Exhibits B5D, B2E).

PageID.46-47. The ALJ applied the grids after determining that plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels," noting that plaintiff's RFC was "just the definition of unskilled work." PageID.48. An ALJ can properly apply the grids where the claimant has only minor nonexertional limitations. *Kimbrough v. Secretary of Health and Human Services*, 801 F.2d 794, 796-97 (6th Cir. 1986) ("it is *only* when the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level that nonexertional limitations must be taken into account and a nonguideline determination made . . . Not even a minor nonexertional limitation is enough; the claimant must show an impairment that significantly limits his ability to do a full range of work at a designated level") (emphasis in original) (internal quotation marks omitted). Accordingly, the ALJ's decision to apply the grids is supported by substantial evidence.

## V. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated:  August 23, 2018                              /s/ Ray Kent
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).